**BALLARD SPAHR LLP**
Stephanie Sheridan (SBN 135910)
sheridans@ballardspahr.com
71 Stevenson St., Suite 400
San Francisco, CA 94105
Telephone: 415.318.2770
Facsimile: 424.731.8301

Brianna R. Howard (SBN 314642)
howardbr@ballardspahr.com
Rebecca Krikorian Clary (SBN 334882)
claryr@ballardspahr.com
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400
Facsimile: 424.204.4350

J. Matthew Thornton (pro hac vice)
thorntonj@ballardspahr.com
Elizabeth A. James (pro hac vice)
jamese@ballardspahr.com
2000 IDS Center, 80 South 8th Street
Minneapolis, MN 55402-2110
Telephone: 612.371.6207

*Attorneys for Defendant Ashley Global Retail, LLC*



**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ASHLEY FURNITURE WEBSITE TRACKING LITIGATION | Case No. 5:26-cv-02806-BLF<br><br>**DEFENDANT ASHLEY GLOBAL RETAIL, LLC'S NOTICE OF AND MOTION TO DISMISS CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: Thursday, December 17, 2026<br>Time: 9:00 a.m.<br>Courtroom: 1 (5th Floor)<br>Judge: Hon. Beth Labson Freeman<br><br>Consolidated Amended Complaint Filed: July 28, 2026 |

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

## NOTICE OF MOTION AND MOTION

TO THE HONORABLE COURT AND ALL PARTIES:

PLEASE TAKE NOTICE that on Thursday, December 17, 2026, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1 of the above-entitled Court, located at the Robert F. Peckham Federal Building & U.S. Courthouse, 280 South 1st Street, San Jose, California 95113, Defendant Ashley Global Retail, LLC ("Defendant" or "Ashley") will and hereby does move the Court for an order dismissing Plaintiffs' Consolidated Amended Class Action Complaint pursuant to Federal Rule of Civil Procedure 9(b), 12(b)(1), and 12(b)(6).

## STATEMENT OF RELIEF REQUESTED

Defendant respectfully moves for an order dismissing with prejudice Plaintiffs Jessica Luu, Kelly Escobedo, Sheri Tucker, and Megan Driscoll's claims for: (1) Invasion of Privacy; (2) Intrusion upon Seclusion; (3) Wiretapping in Violation of California Penal Code § 631; (4) Use of a Pen Register in Violation of California Penal Code § 638.51; (5) Common Law Fraud, Deceit, and/or Misrepresentation; and (6) Unjust Enrichment.

Respectfully submitted,

DATED: August 18, 2026

BALLARD SPAHR LLP

*J. Matthew Thornton*

Brianna R. Howard
Stephanie A. Sheridan
Brianna R. Howard
Rebecca Krikorian Clary
J. Matthew Thornton
Elizabeth A. James

*Attorneys for Defendant Ashley Global Retail, LLC*

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..... 1
STATEMENT OF ISSUES TO BE DECIDED ..... 3
FACTUAL BACKGROUND ..... 3
A. Ashley's Website and Cookie Banner ..... 3
B. Plaintiff Jessica Luu's Website Visit ..... 4
C. Plaintiff Kelly Escobedo's Website Visit ..... 5
D. Plaintiff Sheri Tucker's Website Visit ..... 5
E. Plaintiff Megan Driscoll's Website Visit ..... 5
LEGAL STANDARD ..... 6
ARGUMENT ..... 6
I. Plaintiffs' Fraud Claim Fails Because They Have Not Pleaded Knowledge, Intent, or Damages with the Particularity Required by Rule 9(b). ..... 6
A. Plaintiffs Have Not Alleged Facts Establishing That Ashley Knew When It Implemented Its Cookie Banner That The "Reject All" Button Would Not Function Properly. ..... 7
B. Plaintiffs Have Not Alleged Facts Establishing Fraudulent Intent. ..... 9
C. Plaintiffs Have Not Alleged That Their Reliance on the Website's Inoperable "Reject All" Button Caused Them Actual Monetary Loss. ..... 9
D. Plaintiffs Tucker and Driscoll's Fraud Claims Are Also Time-Barred. ..... 10
II. Plaintiffs Lack Article III Standing Because Routine Website Browsing Data Does Not Implicate a Legally Protected Privacy Interest. ..... 11
III. Plaintiffs' Invasion of Privacy and Intrusion Upon Seclusion Claims Fail. ..... 13
A. Ashley Cannot Intrude on Communications Directed to Its Own Website. ..... 13
B. Any Purported "Invasion" Was Not Highly Offensive. ..... 14
IV. Plaintiffs' Allegations Fail to State a Claim Under Section 631 of CIPA. ..... 15
A. As a Party to Plaintiffs' Alleged Communications, Ashley Cannot Be Held Directly Liable for Violation of Section 631(a). ..... 15
B. Plaintiffs Have Not Plausibly Alleged Facts Sufficient to Establish That Ashley Aided or Conspired with the Developers to Violate CIPA. ..... 16
C. Tucker and Driscoll's Claims Are Time-Barred. ..... 18

V. Plaintiffs' Allegations Fail to State a "Pen Register" Claim Under Section 638.51 of CIPA. ........ 18

A. The Tracking Technologies at Issue Do Not Meet the Statutory Definition of "Pen Register." ........ 18

B. Plaintiffs' Allegations That the Technologies Captured "Contents" Defeat Their Pen Register Claim. ........ 22

C. Tucker and Driscoll's Claims Are Time-Barred. ........ 22

VI. Plaintiffs Cannot State a Claim for Unjust Enrichment. ........ 22

A. California Does Not Recognize Unjust Enrichment as an Independent Cause of Action. ........ 22

B. Plaintiffs Have Not Alleged That Ashley Received a Benefit at Their Expense. ........ 23

CONCLUSION ........ 24

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance Mortg. Co. v. Rothwell*,
10 Cal. 4th 1226 (1995) ..... 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 6, 8

*Aviles v. Liveramp, Inc.*,
No. 24STCV19869, 2025 WL 487196 (Cal. Super. Jan. 28, 2025) ..... 20

*Balabbo v. Wildflower Brands LLC*,
No. 25STCV20971, 2026 WL 1122773 (Cal. Super. Apr. 6, 2026) ..... 22

*Barrales v. Reckitt Benckiser LLC*,
No. 25-cv-10643-BLF, 2026 WL 2212867 (N.D. Cal. July 31, 2026) ..... 10, 12, 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..... 6

*Blalock v. EquipmentShare.com Inc.*,
No. 30-2025-01508739-CU-MC-CJC, 2026 WL 330067 (Cal. Super. Jan. 27, 2026) ..... 20

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ..... 18

*Byars v. Sterling Jewelers, Inc.*,
No. 5:22-cv-01456, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ..... 11

*Capitol Records, Inc. v. Thomas-Rasset*,
No. 06-cv-1497, 2009 WL 1664468 (D. Minn. June 11, 2009) ..... 21

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ..... 8

*Cody v. Boscov's, Inc.*,
658 F. Supp. 3d 779 (C.D. Cal. 2023) ..... 15

*Cody v. Boscov's, Inc.*,
No. 8:22-cv-01434-SSS-kkx, 2024 WL 2228973 (C.D. Cal. May 6, 2024) ..... 15, 16

*Cody v. Lacoste USA, Inc.*,
No. 8:23-cv-00235-SSS-DTB, 2024 WL 3761288 (C.D. Cal. July 30, 2024) ..... 16

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

*de Ayora v. Inspire Brands, Inc.*,
No. 25-CV-03645-AGT, 2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) .............................. 10

*Diflumeri v. Raymond James Fin., Inc.*,
No. 6:25-cv-01899, 2026 U.S. Dist. LEXIS 160223 (M.D. Fla. July 17, 2026) .................... 23

*Doe v. Eating Recovery Ctr.*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .............................................................. 21

*EFK Invs., LLC v. Peerless Ins. Co.*,
No. 13-CV-5910 YGR, 2014 WL 4802920 (N.D. Cal. Sept. 26, 2014)................................. 7

*In re First All. Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) .............................................................. 18

*Forrett v. Gourmet Nut Inc.*,
No. 22-CV-02045-BLF, 2023 WL 3749556 (N.D. Cal. June 1, 2023) ................................ 23

*In re Google Assistant Priv. Litig.*,
546 F. Supp. 3d 945 (N.D. Cal. 2021) .............................................................. 9

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .............................................................. 15, 17

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023) .............................................................. 10

*Gutierrez v. Converse Inc.*,
No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025)................................................ 16

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .............................................................. 14

*Helm v. Alderwoods Grp., Inc.*,
696 F. Supp. 2d 1057 (N.D. Cal. 2009) .............................................................. 7

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .............................................................. 14

*Hernandez-Silva v. Instructure, Inc.*,
No. 2:25-cv-02711, 2025 WL 2233210 (C.D. Cal. Aug. 4, 2025) ................................ 10, 24

*Herzman v. Smile Brands Inc.*,
No. 25-cv-03400-H-BLM, 2026 WL 1110698 (S.D. Cal. Apr. 23, 2026) ............................ 12

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) .............................................................. 14

*Hodes v. Van's Int'l Foods*,
No. 2:09-cv-01530, 2009 WL 10674101 (C.D. Cal. June 23, 2009)....................................... 9



Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

*Hooked Media Grp., Inc. v. Apple Inc.*,
55 Cal. App. 5th 323 (2020) ........................................................................................ 23

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........................................................................ 14

*J.S. v. Spring Fertility Holdings, LLC*,
No. 5:24-CV-07374-EJD, 2026 WL 1483490 (N.D. Cal. May 27, 2026)............................ 17

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024)............................................................................ 14

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) ........................................................................ 21

*Klaehn v. Cali Bamboo LLC*,
No. 21-55738, 2022 WL 1830685 (9th Cir. June 3, 2022) .................................................. 23

*Lewis v. Magnite, Inc.*,
No. 2:25-cv-03448, 2025 WL 3687546 (C.D. Cal. Dec. 4, 2025)......................................... 17

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Mar. 13, 2024) .................................. 21

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................................... 14, 24

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)................................................................................................. 6, 11

*Maghoney v. Dotdash Meredith, Inc.*,
No. 24-cv-2394-AJB-BJW, 2026 WL 497402 (S.D. Cal. Feb. 23, 2026)............................. 12

*Magliocca v. United Healthcare Servs., Inc.*,
No. 2:25-cv-3388, 2026 WL 878694 (E.D. Cal. Mar. 31, 2026).................................... 10, 12

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023)............................................................................ 11

*Ortiz v. Deckers Outdoor Corp.*,
No. 3:25-cv-09631-RFL, 2026 WL 1243675 (N.D. Cal. May 6, 2026).................... 1, 7, 8, 18

*Ortiz v. Foris Dax, Inc.*,
No. 25-CV-08950-EMC, 2026 WL 1430720 (N.D. Cal. May 21, 2026).............................. 23

*Palacios v. Fandom, Inc.*,
24STCV11264, 2024 WL 5494527 (Cal. Super. Sept. 24, 2024) .................................. 19, 20

*Papasan v. Allain*,
478 U.S. 265 (1986)..................................................................................................... 6



Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

*People v. Beeman*,
35 Cal. 3d 547 (1984) .......... 16

*People v. Bullard*,
9 Cal. 5th 94 (2020) .......... 21

*People v. Robles*,
23 Cal. 4th 1106 (2000) .......... 21

*Peterson v. Cellco P'ship*,
164 Cal. App. 4th 1583 (2008) .......... 23

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 1, 11, 12

*Price v. Headspace, Inc.*,
No. 24STCV19921, 2025 WL 1237977 (Cal. Super. Apr. 1, 2025) .......... 22

*Reisberg v. Renaissance Learning, Inc.*,
No. 8:25-cv-01379-FWS-JDE, 2026 WL 1048242 (C.D. Cal. Feb. 17, 2026) .......... 15

*Rodriguez v. Ink America Int'l Grp., LLC*,
25STCV15350, 2025 WL 4034985 (Cal. Super. Dec. 10, 2025) .......... 19, 20, 22

*Rodriguez v. Plivo Inc.*,
No. 24STCV08972, 2024 WL 5184413 (Cal. Super. Oct. 2, 2024) .......... 19

*Rodriguez v. Sparc Grp., LLC*,
No. 24STCV26946, 2025 WL 2993671 (Cal. Super. July 9, 2025) .......... 21, 22

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008) .......... 14

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
No. 2:24-CV-06525-WLH-E, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) .......... 13, 18

*Sanchez v. Cars.com*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super. Jan. 27, 2025) .......... 20, 22

*Schallert v. Orkin LLC*,
No. 24STCV31244, 2025 WL 4332757 (Cal. Super. Dec. 15, 2025) .......... 20

*Schallert v. Palo Alto Networks, Inc.*,
No. 25STCV17109, 2026 WL 754028 (Cal. Super. Mar. 6, 2026) .......... 20

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 14

*Shah v. Talentbridge, Inc.*,
No. 2:26-CV-00222-AH-SSCX, 2026 WL 1507888 (C.D. Cal. May 28, 2026) .......... 11, 12, 13



Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

*Shannon v. Health Net LLC*,
No. 2:26-cv-03814-RGK-E, 2026 U.S. Dist. LEXIS 168843 (C.D. Cal. July 28, 2026) .......... 12

*Small v. Fritz Cos.*,
30 Cal. 4th 167 (2003) .......... 7

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .......... 15, 16

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) .......... 23

*Torres v. Seatgeek, Inc.*,
No. 25-CV-07118-LB, 2026 WL 1495202 (N.D. Cal. May 28, 2026) .......... 6

*Town of Chester v. Laroe Estates, Inc.*,
581 U.S. 433 (2017) .......... 11

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 6

*Valenzuela v. Kroger Co.*,
No. 2:22-cv-06382-DMG-AGR, 2025 WL 851075 (C.D. Cal. Mar. 13, 2025) .......... 16

*Williams v. Apple, Inc.*,
449 F. Supp. 3d 892 (N.D. Cal. 2020) .......... 6

*Williams v. TMC Health*,
No. CV-23-00434-TUC-SHR, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024) .......... 13

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 17

*Zocco v. Nelnet, Inc.*,
No. 5:25-cv-04470, 2026 WL 242037 (N.D. Cal. Jan. 29, 2026) .......... 16

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 17

**Constitutions**

Article III .......... *passim*

**Statutes**

Cal. Civ. Proc. Code § 338 .......... 10

Cal. Penal Code § 631(a) .......... *passim*

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

Cal. Penal Code § 638.50 ........ 19, 22

Cal. Penal Code § 638.51 ........ *passim*

**Court Rules**

Rule 9 ........ *passim*

Rule 12(b)(1) ........ 6, 13

Rule 12(b)(6) ........ 6

**Other Authorities**

86 Ops. Cal. Att'y Gen. 198 (2003) ........ 19

AB 929, *Analysis, Hrg. Before Assembly Comm. on Pub. Safety* (Cal. 2015) ........ 19

AB 929, *Hrg. Before Assembly Comm. on Privacy and Consumer Prot.* (Cal. 2015) ........ 20

Restatement (Second) of Torts ........ 13

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Plaintiffs allege that in the "last four years" they visited Ashley's public retail website, spent a few minutes browsing product pages, and left—having entered no personal information, purchased nothing, and suffered no cognizable harm. They acknowledge that the website conspicuously displayed a cookie banner notifying them of the website's use of tracking technologies but claim that when they attempted to opt out of tracking by clicking a "Reject All" button in a cookie preference center "powered by" one of Ashley's vendors, it did not work. Based on that single alleged technical malfunction, Plaintiffs assert claims ranging from fraud to invasion of privacy to violation of California's penal code. None survives scrutiny.

The fraud claim (Count 5) collapses at the threshold because Plaintiffs have not—and cannot—plead that Ashley knew its vendor's cookie consent tool would fail to block non-essential cookies, let alone that Ashley deployed a "Reject All" button with intent to deceive users. A court in this District recently analyzed and rejected a materially identical fraud theory, holding that a website operator's voluntary use of third-party tools does not establish knowledge of how those tools function. *Ortiz v. Deckers Outdoor Corp.*, No. 3:25-cv-09631-RFL, 2026 WL 1243675, at *2 (N.D. Cal. May 6, 2026). Plaintiffs' fraud allegations are indistinguishable.

Plaintiffs' four remaining claims—invasion of privacy (Count 1), intrusion upon seclusion (Count 2), wiretapping under California Penal Code § 631 (Count 3), and use of a pen register under § 638.51 (Count 4)—fail for overlapping and independent reasons. As a threshold matter, Plaintiffs lack Article III standing to pursue any of them. The Ninth Circuit held in *Popa v. Microsoft Corp.* that the routine collection of browsing data from a public website does not constitute a concrete, particularized injury sufficient to confer standing. 153 F.4th 784, 788, 795 (9th Cir. 2025). The court analogized such data collection to "a store clerk's observing shoppers in order to identify aisles that are particularly popular"—conduct that is neither tortious nor constitutionally cognizable. *See id.* at 791. Plaintiffs' allegation that Ashley disclosed their generic furniture-browsing data to third parties falls squarely within *Popa*'s holding.

Even if Plaintiffs could establish standing, their privacy claims fail on the merits. The invasion of privacy and intrusion upon seclusion claims require an intrusion into a protected privacy interest that would be "highly offensive to a reasonable person." Neither element is satisfied. Ashley owns and operates the website; it cannot intrude on communications Plaintiffs initiated and directed to it. Regardless, the alleged disclosure of Plaintiffs' furniture browsing history does not approach the "highly offensive" disclosure California law requires.

The wiretapping claim under § 631 fails because Ashley, as a party to Plaintiffs' communications with the website, cannot wiretap those communications as a matter of law. Plaintiffs attempt to circumvent this shortcoming by alleging aiding-and-abetting liability, but they have not pleaded the necessary elements: a predicate violation of § 631 by any third party, or Ashley's knowledge and intent to assist such a violation.

The pen register claim under § 638.51 fails for two independent reasons. First, standard website analytics tools are not "pen registers" as defined by the statute. The California Legislature enacted § 638.51 to regulate telephone-style surveillance by law enforcement, not to criminalize the routine operation of commercial websites. Second, Plaintiffs allege that the technologies captured the "contents" of their communications. This is fatal: by statutory definition, a pen register excludes devices that record or decode "the contents of a communication."

The unjust enrichment claim also fails: California does not recognize unjust enrichment as an independent cause of action, plus Plaintiffs have not alleged that Ashley received a benefit at their expense.

Plaintiffs seek to penalize Ashley for attempting to give users a choice about cookie tracking. Even assuming the "Reject All" button did not function as alleged, that does not give rise to a plausible claim for fraud. Nor does it amount to an illegal wiretap, invasion of privacy, or criminal use of a pen register. It would be unjust to allow Plaintiffs, who have suffered no cognizable damages, to continue dragging Ashley through litigation based on these legally deficient theories. The Court should dismiss the Complaint in its entirety with prejudice.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether Plaintiffs' fraud claim should be dismissed for failure to plead knowledge, intent, or actual damages with the particularity required by Rule 9(b).

2. Whether Plaintiffs lack Article III standing to pursue their privacy claims because routine website browsing data on a furniture and décor site does not implicate a legally protected privacy interest.

3. Whether Plaintiffs' invasion of privacy and intrusion upon seclusion claims fail because Ashley cannot intrude on communications directed to its own website and because the alleged disclosure of furniture browsing data is not "highly offensive."

4. Whether Plaintiffs' claim under California Penal Code § 631 fails because (a) Ashley is a party to the alleged communications and cannot wiretap them; and (b) Plaintiffs have not alleged the elements of aiding-and-abetting liability.

5. Whether Plaintiffs' claim under California Penal Code § 638.51 fails because (a) standard website analytics tools are not "pen registers" within the statutory definition; and (b) the tools allegedly captured "contents" and thus cannot be pen registers as defined by statute.

6. Whether Plaintiffs' unjust enrichment claim fails because California does not recognize unjust enrichment as an independent cause of action and because Plaintiffs have not alleged that Ashley received a benefit at their expense.

## FACTUAL BACKGROUND[1]

### A. Ashley's Website and Cookie Banner

Ashley operates a free, publicly accessible retail website that sells furniture and home furnishings, www.ashleyfurniture.com (the "Website"). (CAC ¶¶ 1, 34.) Like most modern websites, the Website uses certain third-party tracking technologies (collectively, "Tracking Technologies") that allegedly enable the developers of such technologies to place data-collecting "cookies" on visitors' browsers the moment they visit the Website. (*Id.* ¶¶ 2, 28, 31.)

To notify users that the Website uses Tracking Technologies, the Website deploys a cookie

---

[1] For the purposes of this Motion only, Ashley accepts as true all well-pled factual allegations.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

banner (the "Cookie Banner") powered by a vendor, OneTrust. (*Id.* ¶¶ 2-4.) The Website also maintains a separate "Privacy Policy," where users can learn more about the Website's use of Tracking Technologies, among other things. (*Id.* ¶ 36.)

In addition to disclosing that the Website uses Tracking Technologies, the Cookie Banner gives users the option to click "Configure" or "Accept All Cookies." (*Id.* ¶ 2.) When a user clicks "Configure," a "Privacy Preference Center" window "powered by OneTrust" appears with options to toggle off some (but not all) of the Website's cookies, including by clicking "Reject All":




(*Id.*) As noted on the consent preferences window, "Strictly Necessary Cookies" are "Always Active" on the Website, regardless of the user's designation. (*Id.*)

**B. Plaintiff Jessica Luu's Website Visit**

Plaintiff Jessica Luu alleges that she visited the Website "[i]n or around January 2026" because she was "interested in purchasing a dining table." (*Id.* ¶ 145.) Luu alleges that upon visiting the Website she saw the Cookie Banner, clicked "Configure," was taken to the cookie preferences window where she clicked "Reject All" before continuing to browse the Website. (*Id.* ¶¶ 147-50.) Luu does not allege that she reviewed any of the information hyperlinked in the cookie preference window (such as Ashley's Privacy Notice) or clicked on the "+" icon next to any of the cookie consent toggles to see what kinds of cookies each specific toggle would affect.

As reflected in a screenshot detailing her precise Website actions, Luu spent less than three minutes on the Website after doing a search for "dining table set" and navigating through various

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

web pages related to dining table sets. (*Id.* ¶¶ 153-55.) Beyond searching for a dining table, Luu does not allege that she inputted any personal or sensitive information—such as financial details, health information, or other confidential data—while visiting the Website. Nor does she specifically allege that as a result of using the Website she suffered any monetary loss.

**C. Plaintiff Kelly Escobedo's Website Visit**

Plaintiff Kelly Escobedo alleges that she visited the Website "[i]n or around November 2025" because she too was "interested in purchasing a dining table." (*Id.* ¶ 159.) Like Luu, she alleges that she was presented with the Cookie Banner, clicked "Configure," then "Reject All," and continued browsing. (*Id.* ¶¶ 161-64.) Escobedo also does not allege that she reviewed any of the information hyperlinked in the cookie preference window or clicked on the "+" icon next to any of the cookie consent toggles to see what kinds of cookies each specific toggle would affect.

Escobedo's alleged "communications" with the Website consist of viewing a product page for a table on November 9, 2025, and viewing a product page for a "Tavern set" on November 10, 2025. (*Id.* ¶ 167.) Beyond browsing for a dining table, Escobedo does not allege that she inputted any personal or sensitive information—such as financial details, health information, or other confidential data—while visiting the Website. Nor does she specifically allege that as a result of using the Website she suffered any monetary loss.

**D. Plaintiff Sheri Tucker's Website Visit**

Plaintiff Sheri Tucker alleges that she visited the Website "on one or more occasions during the last four years." (*Id.* ¶ 173.) Like Escobedo and Luu, she alleges that she was presented with the Cookie Banner, clicked "Configure," then "Reject All," and continued browsing. (*Id.* ¶¶ 175-78.) She does not allege what pages she viewed on the Website or any other actions she took when visiting the Website. Further, there are no allegations that any personal or sensitive information was entered, or that she herself suffered any monetary loss as a result of visiting the Website.

**E. Plaintiff Megan Driscoll's Website Visit**

Plaintiff Megan Driscoll also alleges that she visited the Website "on one or more occasions during the last four years." (*Id.* ¶ 183.) Like the other Plaintiffs, she alleges that she was presented

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

with the Cookie Banner, clicked "Configure," then "Reject All," and continued browsing. (*Id.* ¶¶ 185-88.) She does not allege what pages she viewed on the Website or any other communications she may have had with the Website. Further, there are no allegations that any personal or sensitive information was entered, or that she herself suffered any monetary loss as a result of visiting the Website.

## LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must plead facts from which a court can reasonably infer that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 678; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (holding that for purposes of motion to dismiss courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Plaintiffs also bear the burden of pleading facts sufficient to establish standing for each claim they assert. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). To do so, a plaintiff must demonstrate (i) that he or she "suffered an injury in fact that is concrete, particularized, and actual or imminent"; (ii) "that the injury was likely caused by the defendant"; and (iii) "that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "[L]ack of Article III standing requires dismissal for want of subject matter jurisdiction under Rule 12(b)(1)." *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 900 (N.D. Cal. 2020); *see also Torres v. Seatgeek, Inc.*, No. 25-CV-07118-LB, 2026 WL 1495202, at *1-2 (N.D. Cal. May 28, 2026).

As set forth below, the CAC fails under Rules 12(b)(1) and 12(b)(6) because it lacks the factual specificity required to state plausible claims for relief against Ashley and fails to adequately allege concrete injuries required to establish Article III standing.

## ARGUMENT

### I. Plaintiffs' Fraud Claim Fails Because They Have Not Pleaded Knowledge, Intent, or

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

**Damages with the Particularity Required by Rule 9(b).**

Plaintiffs' common law fraud claim (Count 5) should be dismissed for failure to satisfy Rule 9(b)'s heightened pleading standard. To state a fraud claim under California law, a plaintiff must plead: (1) a false representation, concealment, or nondisclosure; (2) knowledge of falsity (scienter); (3) intent to defraud; (4) justifiable reliance; and (5) damages. *Small v. Fritz Cos.*, 30 Cal. 4th 167, 173 (2003); *EFK Invs., LLC v. Peerless Ins. Co.*, No. 13-CV-5910 YGR, 2014 WL 4802920, at *7 (N.D. Cal. Sept. 26, 2014). Rule 9(b) requires these elements to be pleaded "with particularity." Fed. R. Civ. P. 9(b). Courts in this District have applied Rule 9(b) with rigor in similar cookie-banner cases. *See Ortiz*, 2026 WL 1243675, at *2 (dismissing fraud claim where plaintiff failed to allege defendant's knowledge of how third-party tools functioned).

Plaintiffs' fraud theory is straightforward: the Website offers a "Reject All" button that users can click to reject non-essential cookies, and Plaintiffs claim the button did not work as they anticipated. Setting aside the practical consequences of permitting a fraud claim anytime a website feature fails to operate as a user expected, Plaintiffs' fraud claim fails at every turn. Plaintiffs have not pleaded—with the specificity Rule 9(b) requires—that: (A) Ashley knew, at the time it implemented the "Reject All" button, that the button would fail to reject all non-essential cookies; (B) Ashley intentionally added a non-functioning "Reject All" button to induce users to continue using the Website; or (C) Plaintiffs suffered any actual monetary loss as a result of clicking the "Reject All" button.

**A. <u>Plaintiffs Have Not Alleged Facts Establishing That Ashley Knew When It Implemented Its Cookie Banner That The "Reject All" Button Would Not Function Properly</u>.**

To satisfy the knowledge element, Plaintiffs must allege that Ashley added the "Reject All" button with actual knowledge that the button would not reject all non-essential cookies, or with reckless disregard for the truth. *See Helm v. Alderwoods Grp., Inc.*, 696 F. Supp. 2d 1057, 1080 (N.D. Cal. 2009) (stating plaintiff must plead "facts demonstrating that defendants knew the statements were false when they made them"). Setting aside their conclusory allegations "on

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

information and belief," the Complaint is devoid of facts sufficient to plausibly establish that Ashley knew its OneTrust-powered cookie management tool was not functioning properly when deployed.

*Ortiz v. Deckers Outdoor Corp.* is directly on point. There, the plaintiffs alleged that the defendant "knew, or should have known, how the Websites functioned, including the Third Party's resources it installed on the Websites." 2026 WL 1243675, at *2. The court held that the plaintiffs failed to plausibly allege fraud because their allegations did not support a reasonable inference that the defendant "knew that user data would be collected and transmitted to third parties regardless of whether users opted out." *Id.* Critically, the defendant's voluntary incorporation of third-party technologies into its websites was not sufficient to meet the knowledge element. *Id.*

Plaintiffs try to establish knowledge based on allegations that Ashley "chose" to add a "Reject All" button and "controls the Website's software code" that powers it. (CAC ¶¶ 35, 250-51.) But as *Ortiz* makes clear, ownership and control of a website does not equate to detailed knowledge of how every third-party tool functions. *See* 2026 WL 1243675, at *2 (noting defendant "did not itself develop the third-party resources, so even if [it] incorporated them into its websites voluntarily, that does not suggest that [it] understood how they functioned"). Plaintiffs' remaining allegations focus on Ashley's alleged knowledge *after* the tool was deployed—not at the time of implementation. (*See, e.g.*, CAC ¶¶ 253-57.)

*Ortiz* reflects the unremarkable principle that website operators often lack technical expertise regarding how third-party tracking technologies and consent management tools function. This lack of knowledge is legally significant, particularly under Rule 9(b) and the requirement that courts consider "obvious alternative explanation[s]" for a defendant's conduct. *Iqbal*, 556 U.S. at 682 (quotation omitted); *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) ("When faced with two possible explanations [for a defendant's behavior], only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation." (quotation omitted)). Here, the obvious alternative explanation is that Ashley

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

deployed a third-party cookie consent tool in good faith, without knowledge of any technical deficiencies. Plaintiffs should not be permitted to transform an allegedly imperfect implementation of a vendor-supplied consent tool into actionable fraud. Accepting their theory would expose website operators to fraud claims anytime any third-party preference tools—whether for cookie consent, language selection, or accessibility settings—fail to meet any of their many users' expectations.

**B. <u>Plaintiffs Have Not Alleged Facts Establishing Fraudulent Intent</u>.**

To satisfy the intent element, Plaintiffs must point to more than "merely conclusory" allegations. *Hodes v. Van's Int'l Foods*, No. 2:09-cv-01530, 2009 WL 10674101, at *3 (C.D. Cal. June 23, 2009). The Complaint must allege facts showing that Ashley, "*at the time of the alleged misrepresentations*, had the intent to mislead or omit material information." *In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 970 (N.D. Cal. 2021) (emphasis in original).

Plaintiffs have not alleged any facts suggesting that Ashley implemented the "Reject All" button with an intent to deceive website users. Their conclusory statements that Ashley "knew" and "chose" to deploy allegedly defective cookie consent tools do not rise above speculation. The obvious alternative explanation—that Ashley relied on a vendor to implement a cookie banner and the implementation was unsuccessful—defeats any inference of fraudulent intent. A company does not commit fraud because a software implementation did not work as expected; if it did, every failed software deployment would be grounds for a fraud suit. That cannot be.

**C. <u>Plaintiffs Have Not Alleged That Their Reliance on the Website's Inoperable "Reject All" Button Caused Them Actual Monetary Loss</u>.**

To satisfy the damages element, Plaintiffs must allege facts sufficient to establish that their reliance on the Website's inoperable "Reject All" button caused them to "suffer actual monetary loss." *Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1240 (1995) (quotation omitted). They have not—and cannot—do so.

Plaintiff Luu spent fewer than three minutes on the Website searching for dining tables. (CAC ¶¶ 153–54.) Plaintiff Escobedo visited two product pages on two different days—one for a

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

table and one for a "Tavern set." (*Id.* ¶ 167.) Plaintiffs Tucker and Driscoll provide no information about what pages they visited. (*See id.* ¶¶ 173, 183.) None of the Plaintiffs allege that they paid to access the Website (which is free) or purchased anything from Ashley.

Instead, Plaintiffs allege abstract "injuries" including "loss of money and/or property," "diminution of the value of their private and personally identifiable information," and deprivation of their "property right to control the dissemination and use of their personal information." (CAC ¶¶ 15, 260-61.) These theories do not satisfy the actual monetary loss requirement for a fraud claim. Even if such "economic injury" theories were cognizable, Plaintiffs' allegations would still fall short. *See Hernandez-Silva v. Instructure, Inc.*, No. 2:25-cv-02711, 2025 WL 2233210, at *6 (C.D. Cal. Aug. 4, 2025) (holding that plaintiffs who "generally allege[ ]" their personal information "may be monetized" fail to state cognizable damages absent allegations that they "could have sold the limited data collected," that they "ever attempted or intended to sell [their] data," or that defendant's collection "impeded [their] ability to sell [their] data" (quoting *Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 977 (C.D. Cal. 2023))), *appeal filed,* 25-5438 (9th Cir. 2025); *Magliocca v. United Healthcare Servs., Inc.*, No. 2:25-cv-3388, 2026 WL 878694, at *2 n.1 (E.D. Cal. Mar. 31, 2026) (rejecting speculative diminution-of-value theory as insufficient).

Because Plaintiffs have failed to plausibly allege actual monetary loss, their fraud claim should be dismissed with prejudice.

### D. <u>Plaintiffs Tucker and Driscoll's Fraud Claims Are Also Time-Barred</u>.

Tucker and Driscoll merely allege that they visited the Website "on one or more occasions during the last four years." (CAC ¶¶ 173, 183.) "The statute of limitations for fraud is three years." *Barrales v. Reckitt Benckiser LLC*, No. 25-cv-10643-BLF, 2026 WL 2212867, at *10 (N.D. Cal. July 31, 2026) (Freeman, J.) (citing Cal. Civ. Proc. Code § 338(d)). Here, as in *Barrales*, Plaintiffs Tucker and Driscoll only allege "that they visited the websites at unspecified points in time during the last four years." *See id.* Because "the complaint is so devoid of facts regarding when the alleged conduct occurred that [Ashley] cannot fairly defend the claim," Plaintiffs Tucker and Driscoll's fraud claims should be dismissed for this additional reason. *Id.*; *see also de Ayora v. Inspire*

*Brands, Inc.*, No. 25-CV-03645-AGT, 2025 WL 3707561, at *4 (N.D. Cal. Dec. 22, 2025) (rejecting vague allegation about "when" web visits occurred as sufficient to satisfy Rule 9).

## II. Plaintiffs Lack Article III Standing Because Routine Website Browsing Data Does Not Implicate a Legally Protected Privacy Interest.

Plaintiffs' remaining claims (Counts 1–4) should be dismissed both for failure to adequately plead an injury-in-fact sufficient to support Article III standing, *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) ("a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought" (quotation omitted)), **and** for failure to state a claim upon which relief can be granted (*see* Sections III–VI, *infra*).

To establish Article III standing for a privacy claim, a plaintiff must show that the defendant's conduct caused an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (cleaned up); *see Popa*, 153 F.4th at 788. Courts assess "whether a plaintiff has stated a legally protectable privacy interest based on the nature of the information at issue." *Shah v. Talentbridge, Inc.*, No. 2:26-CV-00222-AH-SSCX, 2026 WL 1507888, at *3 (C.D. Cal. May 28, 2026) (quotation and citation omitted), *appeal filed*, 26-3514 (9th Cir. 2026). The plaintiff "must identify the specific personal information [they] disclosed that implicates a protectable privacy interest." *Id.* (quoting *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023)); *see also Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (dismissing CIPA claim for lack of standing because plaintiff did not "identify any specific personal information she disclosed that implicates a protectable privacy interest").

Here, Plaintiffs primarily allege that the Website allowed third-party developers to capture information reflecting that Plaintiffs visited the Website and—for Luu and Escobedo—looked at or viewed dining tables. (*See* CAC ¶¶ 153-54, 167-70, 173, 183.) As the Ninth Circuit held in *Popa*, this is "most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales" and is not the sort of "embarrassing, invasive, or otherwise private information" that gives rise to a concrete injury. 153

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

F.4th at 791. Since *Popa*, courts have consistently dismissed cookie-tracking claims for lack of standing based on facts substantially similar to those here. *See Barrales*, 2026 WL 2212867, at *3-4 (Freeman, J.); *Shannon v. Health Net LLC*, No. 2:26-cv-03814-RGK-E, 2026 U.S. Dist. LEXIS 168843, at *7-10 (C.D. Cal. July 28, 2026); *Magliocca*, 2026 WL 878694, at *3-4 (finding "routine collection of interaction metadata from a visit to a public website" insufficient); *Herzman v. Smile Brands Inc.*, No. 25-cv-03400-H-BLM, 2026 WL 1110698, at *4 (S.D. Cal. Apr. 23, 2026) (same).

Luu also alleges that the tracking technologies captured her searches for "dining table set" on the Website. (CAC ¶ 153.) Courts have held that generic search terms—even those related to sensitive topics like criminal convictions and health issues—do not implicate a protectable privacy interest unless specifically linked to the visitor's identity. *See Talentbridge*, 2026 WL 1507888, at *3 (finding no protectable privacy interest in searches for "felony-friendly jobs" and "jobs no background check" when not linked to plaintiff's identity); *Maghoney v. Dotdash Meredith, Inc.*, No. 24-cv-2394-AJB-BJW, 2026 WL 497402, at *5 (S.D. Cal. Feb. 23, 2026) (plaintiff who "merely *searched* sensitive health related terms" on a public website did not have a protectable privacy interest because "nothing about Plaintiff's searches indicates those searches were tied to his personal medical history"). A search for "dining table set" is far less sensitive than searches related to criminal background or health information.

This Court's decision in *Barrales* is instructive. There, the Court observed that the complaint was "light on details regarding the named Plaintiffs' specific experiences" with the defendants' websites and that "the allegations [were] framed in terms of the collective class experience or the experience of a composite consumer." 2026 WL 2212867, at *4. "The only information provided about Plaintiffs . . . in particular is that they visited certain websites operated by Defendant, selected the option to 'Disable All' cookies, and browsed on the websites." *Id.* The same is true here: Plaintiffs provide only general information about their cookie selections and website browsing for Luu and Escobedo, and no information at all for Tucker and Driscoll. (*See* CAC ¶¶ 146-48, 153, 159, 162-63, 167, 173, 175-76, 183, 186-87.) These "allegations are insufficient to show that Plaintiffs suffered the type of concrete harm necessary for Article III

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

standing." *Barrales*, 2026 WL 2212867, at *4.

Luu's search for dining tables is not the sort of sensitive information that gives rise to a protectable privacy interest. Even if it were, Luu does not allege she entered any personal information—such as her name, email address, or financial details—that would link her search to her identity. Nor can she bridge the gap with allegations that the tracking technologies intercepted device information; the alleged ability of third parties to use device information to link Luu and her search history is insufficient. *Talentbridge*, 2026 WL 1507888, at *3 n.7. Escobedo's allegations are even weaker: she does not allege that she inputted *any* search terms—merely that she viewed two product pages on two separate days. (CAC ¶¶ 167–68.) Driscoll and Tucker provide no information about any actions they took on the Website. (*See id.* ¶¶ 173, 183.)

Because Plaintiffs have failed to allege that the Tracking Technologies intercepted any information that gives rise to a legally protectable privacy interest, their privacy claims fail and should be dismissed pursuant to Rule 12(b)(1) for lack of standing.

## III. Plaintiffs' Invasion of Privacy and Intrusion Upon Seclusion Claims Fail.

Plaintiffs' invasion of privacy and intrusion upon seclusion claims (Counts 1 and 2) fail for two independently dispositive reasons: (A) Ashley, as a party to the alleged communications, cannot "intrude" on them; and (B) the alleged conduct is not "highly offensive."

### A. Ashley Cannot Intrude on Communications Directed to Its Own Website.

A defendant "cannot logically intrude into communications to which they are a party." *Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-CV-06525-WLH-E, 2025 WL 1141168, at *8 (C.D. Cal. Feb. 27, 2025). Thus, in website tracking cases, "the only *intrusion* is perpetrated by the technology companies, *not* [the d]efendant" who owns the site. *Williams v. TMC Health*, No. CV-23-00434-TUC-SHR, 2024 WL 4364150, at *7 (D. Ariz. Sept. 30, 2024) (emphasis in original) (applying Arizona law, which, like California, adopts the Restatement (Second) of Torts).

Plaintiffs base their claims on Ashley's purported **disclosure** of their web browsing data to third parties—not any intrusion by Ashley into matters where it was not a party. Plaintiffs admit

they intended to communicate with the Website when they interacted with it. (CAC ¶ 34.) This alone requires dismissal of Plaintiffs' privacy claims.

### B. Any Purported "Invasion" Was Not Highly Offensive.

Plaintiffs' claims independently fail because the Website's alleged disclosure of their browsing activity was not "highly offensive"—meaning so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of social norms. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1047 (N.D. Cal. 2025) (granting motion to dismiss invasion of privacy claim because plaintiffs did not allege an intrusion that was offensive "as a matter of public policy").

The California Supreme Court has set a "high bar" for this element: "No community could function if every intrusion into the realm of private action, no matter how slight or trivial, gave rise to a cause of action for invasion of privacy." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994). Courts have held that "[e]ven disclosure of personal information, including social security numbers, does not constitute an egregious breach of the social norms to establish an invasion of privacy claim." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (quotation omitted); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1128 (N.D. Cal. 2008) (same as to Social Security numbers), *aff'd*, 380 F. App'x 689 (9th Cir. 2010).

Plaintiffs allege only that they browsed the Website for dining tables and that the tracking technologies disclosed this information to third parties without their consent. The routine collection and disclosure of generic web browsing data does not constitute an "egregious breach of social norms." *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (disclosure of browsing data is "routine commercial behavior" and not highly offensive); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (same as to "unique device identifier number, personal data, and geolocation information"); *Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 950-51 (S.D. Cal. 2024) (dismissing invasion of privacy claim where plaintiff failed to allege she shared sensitive or confidential information with website).

Because Plaintiffs have not alleged the disclosure of any sensitive or confidential

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

information—only routine browsing activity on a furniture website—they have failed to establish that Ashley's alleged disclosure of such information was "highly offensive." Plaintiffs' invasion of privacy and intrusion upon seclusion claims should therefore be dismissed.

## IV. Plaintiffs' Allegations Fail to State a Claim Under Section 631 of CIPA.

CIPA § 631(a) prohibits: (1) intentionally wiretapping, or making an unauthorized connection with, any telegraph, telephone wire, line, cable, or instrument; (2) willfully reading the "contents or meaning" of a communication while in transit over a wire without all parties' consent; (3) attempting to use or communicate information obtained through the preceding activities; or (4) "aid[ing], agree[ing] with, employ[ing], or conspir[ing] with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above." Cal. Penal Code § 631(a); *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 939-40 (N.D. Cal. 2024); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021).

Plaintiffs' Section 631(a) claim (Count 3) fails for multiple reasons. First, Ashley, as a party to Plaintiffs' communications with the Website, cannot be held directly liable under Section 631(a). Second, Plaintiffs' allegations do not plausibly support aiding-and-abetting liability. Third, Plaintiffs Tucker's and Driscoll's claims are barred by the statute of limitations.

### A. <u>As a Party to Plaintiffs' Alleged Communications, Ashley Cannot Be Held Directly Liable for Violation of Section 631(a)</u>.

Parties to a communication are not subject to liability under Section 631(a)'s first three clauses. *See Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779, 782 (C.D. Cal. 2023); *see also Reisberg v. Renaissance Learning, Inc.*, No. 8:25-cv-01379-FWS-JDE, 2026 WL 1048242, at *6-7 (C.D. Cal. Feb. 17, 2026) (dismissing wiretapping claim where defendant "cannot legally intercept" its own communications). Here, there is no dispute that Ashley, as owner and operator of the Website, was a party to any communications that Plaintiffs had with the Website. (CAC ¶ 34 (alleging users communicate with Defendant when they browse the Website).) Thus, to state a claim against Ashley, Plaintiffs must allege facts sufficient to establish that it aided and abetted a third party's direct violation of the statute. *See Cody v. Boscov's, Inc.*, No. 8:22-cv-01434-SSS-kkx, 2024 WL

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

2228973, at *2 (C.D. Cal. May 6, 2024); *see also Zocco v. Nelnet, Inc.*, No. 5:25-cv-04470, 2026 WL 242037, at *6 (N.D. Cal. Jan. 29, 2026) (dismissing Section 631 claim where plaintiff failed to plausibly allege aiding and abetting).

**B. <u>Plaintiffs Have Not Plausibly Alleged Facts Sufficient to Establish That Ashley Aided or Conspired with the Developers to Violate CIPA</u>.**

To state a Section 631(a) claim based on a derivative aiding-and-abetting liability, Plaintiffs must first allege facts establishing that a third party committed a predicate violation of one of the section's first three clauses. Cal. Penal Code § 631(a); *Boscov's*, 2024 WL 2228973, at *2 ("In order to sustain [an aiding and abetting] claim, Plaintiff must adequately plead that [the third party] itself has engaged in conduct falling under one of the first three prongs of the statute."); *Cody v. Lacoste USA, Inc.*, No. 8:23-cv-00235-SSS-DTB, 2024 WL 3761288, at *2 (C.D. Cal. July 30, 2024) (same); *see also Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025) (affirming dismissal for failure to establish predicate violation).

Even if Plaintiffs could allege a predicate violation, they must also allege that Ashley aided, agreed with, employed, or conspired with each developer to "unlawfully do, or permit, or cause to be done" the unlawful act. Cal. Penal Code § 631(a). This requires allegations that Ashley: (1) had knowledge of each developer's unlawful conduct, and (2) acted "***in order to*** have the third party perform acts that violate the statute." *YETI*, 754 F. Supp. 3d at 942 (emphasis in original); *People v. Beeman*, 35 Cal. 3d 547, 560 (1984) (holding a plaintiff must establish a defendant "act[ed] with knowledge of the criminal purpose of the perpetrator ***and*** with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense") (emphasis in original); *Valenzuela v. Kroger Co.*, No. 2:22-cv-06382-DMG-AGR, 2025 WL 851075, at *3 (C.D. Cal. Mar. 13, 2025) (affirming Section 631(a)'s scienter requirement).

Plaintiffs' allegations fail on both requirements.

**First**, Plaintiffs have not alleged facts establishing that any third-party developer violated Section 631(a) by (a) attempting to read or learn the "contents" of Plaintiffs' communications (b) while in transit. Plaintiffs Escobedo, Tucker, and Driscoll's claims fail on the first element; all

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

Plaintiffs' claims fail on the second.

Unlike Luu, who alleges that developers intercepted search terms she entered on the Website, the other Plaintiffs fail to allege that developers intercepted the "contents" of any communications. The Ninth Circuit distinguishes between "contents"—the "intended message conveyed by the communication"—and "record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (§ 631(a) protects "user-generated material" but not "routine identifiers"). Escobedo alleges, at most, that developers intercepted automatically-generated data about her browsing activity—not any information she intentionally communicated to the Website. (CAC ¶¶ 167-69.) Tucker and Driscoll provide no information about any searches they performed or any browsing activity. (*See id.* ¶¶ 173, 183.)

All Plaintiffs also fail to allege that developers read or learned the contents of any communications "while in transit." General allegations that third-party cookies transmit data to external servers do not establish that anyone read or learned the contents of those communications contemporaneously with transmission—as opposed to after collection. *See Lewis v. Magnite, Inc.*, No. 2:25-cv-03448, 2025 WL 3687546, at *11-12 (C.D. Cal. Dec. 4, 2025) (dismissing § 631(a) claim because allegations "suggest[ed] that [the defendant] would analyze Plaintiffs' communications after it collects them, not as it collects them"); *J.S. v. Spring Fertility Holdings, LLC*, No. 5:24-CV-07374-EJD, 2026 WL 1483490, at *5 (N.D. Cal. May 27, 2026) (dismissing claim where allegations suggested post-hoc processing rather than real-time interception). The Complaint here suffers from the same deficiency—Plaintiffs do not allege facts showing real-time reading of the contents as distinguished from mere collection and subsequent analysis by the developers.

Because Plaintiffs have not plausibly alleged a predicate violation of Section 631 by any third-party developer, they cannot maintain an aiding-and-abetting claim against Ashley. *See Graham*, 533 F. Supp. 3d at 833 (holding defendant was not liable for aiding and abetting third

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

party's wrongdoing "because there [was] no wrongdoing").

**Second**, even assuming a predicate violation, Plaintiffs' claim fails because they have not alleged that Ashley acted with the requisite knowledge and intent. An aider and abettor must have "actual knowledge of the specific primary wrong the defendant substantially assisted." *In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006). Although Plaintiffs assert a panoply of alleged acts by various unrelated developers, they fail to allege that Ashley knew such acts to be unlawful or that it did anything for the purpose of advancing them. To the contrary, the Complaint alleges only that Ashley incorporated third-party tracking technologies for its own legitimate business purposes—such as to track and store data and other disclosed reasons, *see* CAC ¶ 36—not to aid third-party developers in committing any crime. Without plausible, non-conclusory allegations establishing the requisite knowledge and intent, Plaintiffs' aiding-and-abetting theory fails. *See Ortiz*, 2026 WL 1243675, at *2.

### C. <u>Tucker and Driscoll's Claims Are Time-Barred</u>.

Tucker and Driscoll allege only that they visited the Website "on one or more occasions during the last four years." (CAC ¶¶ 173, 183.) The statute of limitations for a CIPA claim is one year. *Saedi*, 2025 WL 1141168, at *8. Because they have not alleged a visit within that period, their claims must be dismissed. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 135 (N.D. Cal. 2020).

## V. Plaintiffs' Allegations Fail to State a "Pen Register" Claim Under Section 638.51 of CIPA.

Section 638.51 is a provision within California's criminal code that regulates "pen registers" and "trap and trace" devices. Plaintiffs allege that Ashley violated Section 638.51 (Count 4) by "install[ing] or us[ing] a pen register" without a court order to intercept their devices' IP Addresses. This claim fails because (A) the tracking technologies Ashley uses on its Website are not "pen registers" within the meaning of CIPA, and (B) Plaintiffs' allegations that the technologies captured the "contents" of communications are fatal to a pen register claim.

### A. <u>The Tracking Technologies at Issue Do Not Meet the Statutory Definition of</u>

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

**"Pen Register."**

A "pen register" is defined as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). A "trap and trace" device, by contrast, is defined as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." *Id.* § 638.50(c).

Whether a device qualifies as a pen register depends on "the type of information being collected and not the device or process." *Rodriguez v. Plivo Inc.*, No. 24STCV08972, 2024 WL 5184413, at *2 (Cal. Super. Oct. 2, 2024). Although the statutory definition was amended to encompass some new methods of electronic communication, "the category of information collected by pen registers as defined by the statute" has not expanded beyond telephone numbers or their modern analog. *Palacios v. Fandom, Inc.*, 24STCV11264, 2024 WL 5494527, at *3 (Cal. Super. Sept. 24, 2024); *Rodriguez v. Ink Am. Int'l Grp., LLC*, 25STCV15350, 2025 WL 4034985, at *3 (Cal. Super. Dec. 10, 2025) ("CIPA's structure and history indicate that its pen-register provisions were aimed at telephonic-style surveillance, not at the routine operation of commercial websites or analytical software.").

Historically, pen registers were attached to a known witness or suspect's phone line to monitor **outgoing** call numbers, while trap and trace devices tracked **incoming** numbers. *See* AB 929, *Analysis, Hrg. Before Assembly Comm. on Pub. Safety*, at S–T (Cal. 2015); 86 Ops. Cal. Att'y Gen. 198, at 2 (2003). Neither device was designed to collect information about the monitored device itself—nor was it necessary, as the monitoring party had necessarily ascertained such information in order to install the pen register in the first instance.

Up until 2015, the use of pen registers was regulated by federal law. *See Analysis, Hrg. Before Assembly Comm. on Pub. Safety*, at T. The California legislature added a pen register provision to CIPA in 2015 to address two narrow, law enforcement-related goals: (1) authorize

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

state and local law enforcement to seek emergency pen register orders, and (2) clarify the evidentiary burden for such orders. *See*, *e.g.*, AB 929, *Hrg. Before Assembly Comm. on Privacy and Consumer Prot.*, at 4-5, 11-12 (Cal. 2015). "Nowhere in [Section 638.51's legislative] history is there any indication, whatsoever, that the Legislature . . . intended [pen register] devices, as defined in section 638.51, to apply to website tracking software." *Schallert v. Orkin LLC*, No. 24STCV31244, 2025 WL 4332757, at *4 (Cal. Super. Dec. 15, 2025).

Many courts have held that CIPA § 638.51 does not apply to the Internet at all, since the backbone of the Internet—IP addresses—are not expressly referenced in CIPA's definition of a pen register (or trap and trace) device, unlike other privacy statutes enacted around the same time, which do expressly reference IP addresses. *See Schallert v. Palo Alto Networks, Inc.*, No. 25STCV17109, 2026 WL 754028, at *2 (Cal. Super. Mar. 6, 2026) (finding that CIPA does not extend to website communications); *Blalock v. EquipmentShare.com Inc.*, No. 30-2025-01508739-CU-MC-CJC, 2026 WL 330067, at *1-2 (Cal. Super. Jan. 27, 2026) (holding CIPA does not apply to internet communications). This was not an unintended omission—it was a deliberate choice recognizing that the collection and sharing of IP addresses is fundamental to the operation of the Internet, and requiring websites to obtain a court order for each California visitor would be entirely infeasible. *See Orkin*, 2025 WL 4332757, at *2 (finding "no basis to conclude that the Legislature intended to impose a broad regulatory and civil-liability scheme around website tracking" when it enacted CIPA's pen register provision); *see also Sanchez v. Cars.com*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025) (concluding that Section 638.51 "applies only to telephone-tracking technology, not IP address-collecting software"). Even where courts have held that IP addresses are regulated by Section 638.51, there is a growing consensus amongst them that the statute applies—**at most**—to website IP addresses "accessed by a [user's] computer," not "the **computer's own IP address**." *Palacios v. Fandom, Inc.*, No. 24STCV11264, 2024 WL 5494527, at *3 (Cal. Super. Sept. 24, 2024) (emphasis added); *Ink Am. Int'l Grp.*, 2025 WL 4034985, at *5; *Aviles v. Liveramp, Inc.*, No. 24STCV19869, 2025 WL 487196, at *3 (Cal. Super. Jan. 28, 2025).

Plaintiffs' broad reading of Section 638.51 would effectively criminalize the operation of

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

the Internet because anytime "users visit a website, their devices automatically send their IP addresses to the website's server as part of the communication process." *See Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025); *Capitol Records, Inc. v. Thomas-Rasset*, No. 06-cv-1497, 2009 WL 1664468, at *3 (D. Minn. June 11, 2009) (holding that, if the federal analogue to § 638.51 were construed to preclude IP addresses from being recorded, "the Internet could not function because standard computer operations require recording IP addresses"); *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Super. Mar. 13, 2024) (same). California courts have repeatedly cautioned against adopting an interpretation of the statute that would give rise to such an "absurd result"—especially when interpreting a criminal statute, which, as recently characterized by one court, is a "total mess." *See Doe v. Eating Recovery Ctr.*, 806 F. Supp. 3d 1109, 1112, 1118 (N.D. Cal. 2025) (noting that CIPA "is a criminal statute. . . . Even though most CIPA cases are private civil actions, the interpretations courts adopt . . . could affect the extent to which people or companies are subject to criminal liability"); *Rodriguez v. Sparc Grp., LLC*, No. 24STCV26946, 2025 WL 2993671, at *3 (Cal. Super. July 9, 2025) ("If CIPA broadly prohibits any process by which anyone identifies any 'originating number,' then every cell phone in the world—which identifies the phone number of incoming calls—would be a prohibited trap and trace device. So would every website interaction that identifies electronic information about the user in a manner that allows the website to function. There is no indication that, in enacting the trap and trace device prohibition, the California Legislature meant to cover such devices."); *see also People v. Bullard*, 9 Cal. 5th 94, 106 (2020) (noting that the court "must [] choose a reasonable interpretation that avoids absurd consequences that could not possibly have been intended").

If any doubt remains, Section 638.51 is a penal statute, and "[w]hen . . . the language of a penal law is reasonably susceptible of two interpretations, [courts] construe the law as favorably to criminal defendants as reasonably permitted by the statutory language and circumstances." *People v. Robles*, 23 Cal. 4th 1106, 1115 (2000) (quotations omitted). As pertinent here, the rule of lenity requires any ambiguity in the definition of a "pen register"—particularly as applied in the

context of website tracking—to be resolved in Ashley's favor. *See Sparc Grp., LLC*, 2025 WL 2993671, at *3; *Ink Am. Int'l Grp.*, 2025 WL 4034985, at *4; *Cars.com*, 2025 WL 487194, at *3. The Court should reject Plaintiffs' proposed interpretation of Section 638.51 and dismiss Plaintiffs' pen register claim with prejudice.

**B. <u>Plaintiffs' Allegations That the Technologies Captured "Contents" Defeat Their Pen Register Claim</u>.**

Plaintiffs' pen register claim independently fails because Plaintiffs allege (albeit in conclusory fashion) that the tracking technologies intercepted the "content" of their communications. (*See, e.g.*, CAC ¶¶ 32, 52.) By statutory definition, a pen register records information "but **not** the contents of a communication." Cal. Penal Code § 638.50(b) (emphasis added).

In *Balabbo v. Wildflower Brands LLC*, the court sustained a demurrer to a § 638.51 claim on precisely this ground, holding that "[t]he Court must give significance to" the "but not the contents of a communication" language, and that where the plaintiff "is in essence alleging that Defendant captures the content of Plaintiff's communications with Defendant's website," the devices at issue do not qualify as pen registers. No. 25STCV20971, 2026 WL 1122773, at *5 (Cal. Super. Apr. 6, 2026); *see also Price v. Headspace, Inc.*, No. 24STCV19921, 2025 WL 1237977, at *3 (Cal. Super. Apr. 1, 2025).

Because Plaintiffs allege that the tracking technologies captured "contents," those technologies cannot, by statutory definition, be "pen registers." Plaintiffs' pen register claim should be dismissed with prejudice.

**C. <u>Tucker and Driscoll's Claims Are Time-Barred</u>.**

As with their § 631 claims, Tucker and Driscoll's § 638.51 claims fail for the additional reason that they have not pleaded a visit within the one-year statute of limitations. *See supra* Section IV.C.

**VI. Plaintiffs Cannot State a Claim for Unjust Enrichment.**

**A. <u>California Does Not Recognize Unjust Enrichment as an Independent Cause</u>**

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

**of Action**.

California law "does not recognize a cause of action for unjust enrichment." *Hooked Media Grp., Inc. v. Apple Inc.*, 55 Cal. App. 5th 323, 336 (2020). Unjust enrichment is "a remedy for some other valid cause of action." *Klaehn v. Cali Bamboo LLC*, No. 21-55738, 2022 WL 1830685, at *2 n.2 (9th Cir. June 3, 2022); *Forrett v. Gourmet Nut Inc.*, No. 22-CV-02045-BLF, 2023 WL 3749556, at *8 (N.D. Cal. June 1, 2023). It is also an equitable remedy, available only when the plaintiff "lacks an adequate remedy at law." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

Plaintiffs have not stated any viable cause of action under which they can seek an unjust enrichment remedy. Even if they could, their other asserted causes of action provide adequate remedies at law, foreclosing equitable relief.

**B. Plaintiffs Have Not Alleged That Ashley Received a Benefit at Their Expense**.

Even recast as a claim for restitution, Plaintiffs' unjust enrichment claim fails because they must plead that (1) Ashley received a benefit, (2) Plaintiffs conferred the benefit at their own expense, and (3) retention would be unjust. *See, e.g.*, *Diflumeri v. Raymond James Fin., Inc.*, No. 6:25-cv-01899, 2026 U.S. Dist. LEXIS 160223, at *35 (M.D. Fla. July 17, 2026) (addressing California unjust enrichment claim in similar tracking case). Plaintiffs' allegations satisfy none of these elements.

**First**, Plaintiffs fail to allege that Ashley received any cognizable benefit. The Complaint alleges that Ashley enabled **third parties** to collect data from visitors and that those third parties used the data to "create consumer profiles" and "perform targeted advertising and marketing analytics." (*See, e.g.*, CAC ¶¶ 79, 206.) Plaintiffs acknowledge that they intended for Ashley to receive information about their Website visits; their objection is to **third-party** tracking. (*See* CAC ¶¶ 51, 155, 169 (alleging Plaintiffs "intend[ed] to communicate the contents of their search[es] directly to the Website" and sought to reject consent to third-party tracking).) Because the Complaint alleges that third parties—not Ashley—received the purported benefit, the first element is not satisfied. *See Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593, 1596 (2008); *Ortiz*

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

*v. Foris Dax, Inc.*, No. 25-CV-08950-EMC, 2026 WL 1430720, at *9 (N.D. Cal. May 21, 2026) ("Without non-conclusory allegations of the benefit Defendant received from placing third-party cookies, Plaintiffs cannot state a cause of action for unjust enrichment.").

**Second**, Plaintiffs fail to allege that any benefit was conferred at their expense. The information at issue—generic browsing data reflecting that Plaintiffs looked at dining tables—carries no cognizable economic value. Courts have held that routine website interaction data does not constitute "property" or give rise to a compensable injury absent allegations that the plaintiff attempted to monetize the data, that a market existed for such data, or that the defendant's conduct diminished the data's economic value. *See, e.g.*, *Low*, 900 F. Supp. 2d at 1030 (stating "the weight of authority holds that a plaintiff's 'personal information' does not constitute property" and listing cases); *Hernandez-Silva*, 2025 WL 2233210, at *6. Plaintiffs allege no facts suggesting they ever attempted to monetize their browsing data or that a market existed for it.

**Third**, Plaintiffs do not allege facts showing that retention of any benefit would be unjust. They browsed a free, public website; Ashley provided them with access to product information in return. There is nothing inequitable about that exchange.

For these reasons, the Court should dismiss Plaintiffs' unjust enrichment claim.

## CONCLUSION

Plaintiffs visited a free, public furniture website, encountered a cookie banner disclosing the use of tracking technologies, clicked a "Reject All" button they contend was inoperable, and spent a few minutes browsing for dining tables. That is the sum total of their allegations in this case. They did not share personal, sensitive, or confidential information. They did not suffer any monetary loss. And they do not—and cannot—allege that Ashley intended to deceive them. Their fraud claim fails because Plaintiffs have not pleaded knowledge, intent, or damages with the particularity Rule 9(b) requires—and Tucker and Driscoll's fraud claims are independently barred by the three-year statute of limitations. Their privacy and intrusion claims fail for two independent reasons: Ashley cannot intrude on communications directed to its own website, and the alleged disclosure of routine furniture-browsing data is not "highly offensive" as a matter of law. Plaintiffs

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

also lack Article III standing because routine browsing data on a public retail website does not implicate a legally protected privacy interest. Their wiretapping claim under Section 631 fails because Ashley, as a party to the communications, cannot wiretap them, and Plaintiffs have not alleged the predicate third-party violation or the knowledge and intent required for aiding-and-abetting liability. Their pen register claim under Section 638.51 fails because website analytics tools are not "pen registers" within the statutory definition, and Plaintiffs' own allegation that the technologies captured "contents" is fatal to such a claim. Tucker and Driscoll's CIPA claims are also time-barred under the one-year statute of limitations. Finally, Plaintiffs' unjust enrichment claim fails because California does not recognize it as an independent cause of action and because Plaintiffs have not alleged that Ashley received any benefit at their expense. These are not pleading defects that can be cured by amendment—they are fundamental failures of legal theory. The Court should dismiss the Consolidated Amended Class Action Complaint in its entirety with prejudice.

Respectfully submitted,

DATED: August 18, 2026

BALLARD SPAHR LLP

By: <u>/s/ J. Matthew Thornton</u>

Stephanie A. Sheridan
Brianna R. Howard
Rebecca Krikorian Clary
J. Matthew Thornton
Elizabeth A. James

*Attorneys for Defendant Ashley Global Retail, LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2026, I electronically transmitted the foregoing document to the U.S. District Court for the Northern District of California Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

/s/ *Susan M. Goettl*

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915